Allen Roger Williams, et al., Plaintiffs-Appellees, v.
Sohio Petroleum Company, Defendant-Appellant.

Term No. 58–F–6.

Fourth District.

April 22, 1958.

Rehearing denied May 26, 1958.

Released for publication August 6, 1958.

Howard W. Campbell, Craig & Craig, of Mt. Vernon, for defendant-appellant.

William G. Eovaldi, Elmer Jenkins, of Benton, for plaintiff-appellees.

JUDGE SCHEINEMAN delivered the opinion of the court.

This case involves the construction and effect of an oil and gas lease, in which the lessors reserved $\frac{1}{32}$ of $\frac{7}{8}$ of all oil and gas produced under the lease, as an "overriding" royalty, in addition to the owner's customary $\frac{1}{8}$ royalty. The lease is the standard Producers 88 form, with typed addition concerning the override.

The plaintiffs were the owners and operators of a farm, and leased 125 acres to C. E. Brehm (not a party to the suit) for oil and gas purposes. It is undisputed that they owned the tract of land, but only $\frac{1}{4}$th of the mineral rights. The land is described in the document with the usual provision for $\frac{1}{8}$th royalty on all oil and gas produced and saved, also the usual "lesser interest" provision, the effect of which is that, if lessors own

less than all the mineral rights, their royalties would be proportionate to their fractional interest. There was a provision for pooling this land with other land, and, at the bottom of the document, the following was typed in:

"In addition to the royalties provided for above, the Lessors hereby reserve an overriding royalty of $\frac{1}{32}$nd of $\frac{7}{8}$ths of all oil and gas produced and saved under and by virtue of this oil and gas lease."

At the date of the lease, this was "wildcat" territory, but it has since been developed and there are now producing wells on the premises, and others on pooled land. The defendant is the purchaser of the oil from the operators. It has tendered to plaintiffs distribution agreements which contemplate paying for $\frac{1}{4}$th of the $\frac{1}{8}$th owner's royalty, and likewise $\frac{1}{4}$th of $\frac{1}{32}$nd of $\frac{7}{8}$ths of oil from the premises, and like fractions of the proportion of oil produced under the pool arrangement. Plaintiffs do not question the $\frac{1}{4}$th of $\frac{1}{8}$th royalty, but claim that the overriding royalty applies to all oil from the premises, and in proportion from pooled property, instead of basing it on their $\frac{1}{4}$th of the mineral rights; and this suit ensued.

On the hearing, the trial court admitted parol testimony of the negotiations leading up to the execution of the lease, and overruled defendant's objections that this violated the Parol Evidence Rule. A man named York testified that he had been employed to obtain oil leases in this territory for C. E. Brehm, that he had negotiated with one of the lessors, and was told they owned all of the surface and $\frac{1}{4}$th of the mineral rights. He offered them a cash bonus of $10 per acre for a lease on customary terms. This offer was rejected, and he was told the owners did not want cash, they wanted an override of $\frac{1}{32}$nd of $\frac{7}{8}$ths of all the oil and gas. After several unsuccessful efforts to obtain other terms, York says he went to his superior and obtained au-

thority to meet the proposal. He so informed the lessors, and he prepared the form of lease above mentioned. As they were about to sign, he was again asked if this had the effect of giving them $\frac{1}{32}$nd of $\frac{7}{8}$ths of "all the gas and oil," and he answered "Yes." Then the signing was completed.

The lessors' testimony as to the negotiations was to the same effect. The trial court recognized that, under precedents in other states, the words in the written instrument would produce an overriding royalty as to the $\frac{1}{4}$th of the mineral rights owned by plaintiffs, rather than as to the total acreage. However, the court ruled that the plaintiffs had been induced to sign by the representations of Brehm, through his agent York, and that those representations should be given effect. Accordingly, the defendant was ordered to account to plaintiffs on the basis of oil produced from the "premises," as prayed in the complaint.

On this appeal the defendant contends that the authority of York was not proved, because, when a question of agency is involved, authority cannot be based solely on the statements of the purported agent; that the lesser interest clause in the lease applies to all royalties in the lease including an overriding royalty; that the court erred in admitting parol testimony to vary the written agreement; and that the court had undertaken, in effect, to reform the lease, although one of the parties to it was not a party to the suit.

As to the first point, we agree with a statement by the trial judge, that there is no issue of agency in the case. The complaint was based upon a lease to Brehm, which the answer admitted, and the defendant later introduced in evidence the original lease signed by Brehm. The authority of York was not questioned by pleadings or objections at the trial. Hence, the rule applied when agency is directly involved cannot be invoked here.

■ We agree that the wording of the whole lease is properly considered when the court is called upon to construe its legal effect. But much of the argument about the lesser interest clause is beside the point, and we do not propose to hold that any overriding royalty reserved in the lease, regardless of wording, is automatically reduced by that clause.

■ Where the minerals are owned by several parties, it is natural that the customary ⅛th owner's royalty should be divided according to the fractional interests. If this entire royalty were paid to one fractional owner, the lessee would still be liable to the others. To protect the lessee from such double liability, the lesser interest provision is inserted, and it is in the nature of a covenant of title. Griffin v. Stanolind Oil & Gas Co., 133 Tex. 45, 125 S.W.2d 545.

■ ■ The share of the lessee, usually ⅞ths, is commonly called the "working interest." An overriding royalty is normally a charge on that working interest as distinguished from the owners' interest. Kingwood Oil Co. v. Bell, 136 Fed. Supp. 229; Wright v. Brush, 115 F.2d 265; Halbert v. Hendrix, 121 Ind. App. 43, 95 N.E.2d 221. Obviously, nobody acquires such an overriding interest merely by virtue of ownership of mineral rights. It is acquired only by contract, and is payable in the amount and to the person designated by the contract, and no one else. No question of double liability to other owners can arise therefrom, hence, the reason for a lesser interest clause does not apply.

■ This digression is included only because much of the argument in the briefs concerns the lesser interest clause, and defendant cites a Texas case, hereafter mentioned, which did refer to the lesser interest clause. However, the extent of the overriding royalty may be, and often is, limited by the extent of the mineral interest of the owner. It depends upon the wording of the reservation. The majority of the decisions hold this

198

wording controls, without reference to a lesser interest clause, and the same method of construction is applied both to leases, and to deeds, even though the latter have no similar lesser interest clause.

The reasoning is simply this: although the lease describes a certain tract of land, it cannot confer on the lessee any greater rights to the oil than the owner has. If the lessor owns only a fraction of the minerals, the lessee must deal with the other owners to acquire a right to work their interests; he obtains by the first lease only the limited right to take that owner's fraction of the oil. The owner may demand an override as to all oil taken from the described land, or, he may limit the override to the oil rights included under the lease. In the latter case, it applies only to the fraction he owned. The following are illustrative cases:

Pollock v. McAlester Fuel Co., 215 Ark. 842, 223 S.W.2d 813. The lessor owned all the land and one-half the mineral rights. He made an oil lease describing the land, and reserving an overriding royalty to $\frac{1}{16}$th of $\frac{7}{8}$ths of all oil and gas produced "under the terms of this lease." The court held the override must be applied to only one-half the oil taken from the land, because that was all that could be produced under the "terms of the lease." The court included this statement, which appears in other oil cases:

"Reservations, if made, may be worded as the parties please. If they provide that the grantor shall have a named fraction of the oil produced on all of the described land, that is one thing; if they provide that he shall have a fraction of what is produced from the interest conveyed by the particular lease, it is another thing. The courts will enforce either agreement as made."

R. Lacy, Inc. v. Jarrett (Tex. Civ. App.), 214 S.W.2d 692. A landowner owned only a fraction of the minerals thereunder. He made a lease reserving a fraction of

199

the oil produced "from the land described in this lease." The court held this would not be limited to his fraction of mineral rights, but applied to all oil produced from the land.

Hooks v. Neil (Tex. Civ. App.), 21 S.W.2d 532. This involved a deed rather than a lease. The owner of a one-half interest in land conveyed it reserving a fraction of oil produced on "the land and premises herein described and conveyed." Held: the reservation applied only to one-half since that was all the deed *conveyed.*

King v. First National Bank, 144 Tex. 583, 192 S.W.2d 260. This was also a deed by the owner of an undivided one-half interest in land. The reservation was of a fraction of oil produced from "the hereinabove described land." Held: The reservation would not be reduced to one-half of oil produced, but applied to all oil produced from the *described land,* since that is what the deed said.

McMahon v. Christmann, 303 S.W.2d 341. This is the case cited by the briefs in which the court referred to the "lesser interest clause." It was held not to apply, because the reservation contained the words "without reduction." A better reasoned concurring opinion pointed out there was no need to refer to the lesser interest provision, because the reserved override was a fraction of all oil produced from the *described land,* and would have to be given that effect for the simple reason that was what the reservation said.

■ We look upon the approach and the reasoning in the above precedents as convincing. In this case, only 1/4th of the oil produced from the premises is produced by virtue of plaintiffs' lease. Since the overriding royalty was a fraction of oil produced "under and by virtue of this oil and gas lease" we must hold that the fraction applies only to the 1/4th interest involved, and not to all oil produced from the "premises" as alleged in the complaint.

200

■ This is the legal effect of the wording of the lease. It is clear therefore, that the parol evidence admitted in the case is for the purpose of altering the legal effect of the instrument. It is intended to be a basis for increasing the override to four times the actual provision of the lease. Thus it appears to be a violation of the Parol Evidence Rule.

We recognize that there are many exceptions to the rule, so that parol evidence of representations may be admissible under certain conditions, such as fraud, fiduciary relation, suits to reform, etc., but we fail to see how any of the exceptions can be applied here. This defendant had nothing to do with the representations made, nor is there any charge of fraud, etc., against it. There is no equitable reason to subject the defendant to double liability as to ¾ths of a fraction of oil. On the other hand, if it is intended that Brehm shall be subjected to an overriding royalty four times what the lease provides, we fail to find any authority for doing so when he is not a party to the suit.

"Except for the purpose of having a contract reformed, a party to a written agreement may not assert its validity and at the same time deny that the writing embodies the actual contractual rights and obligations which the parties intended to make." 20 Am. Jur., Evidence, Sec. 1099.

In Walter v. Sohio Pet. Co., 402 Ill. 33, 83 N.E.2d 346, the court said:

"Some effort was made by appellant to introduce conversations and explanations of what was intended to be included in the assignment, but it was unnecessary to discuss this contention because of the well-settled rule that parol evidence is not admissible to contradict the terms of a contract in writing actually entered into and particularly against an innocent third party. (Citations)"

The parol evidence in this case attempts to contradict the terms of the written instrument, in a case against an innocent third party. Accordingly, we hold it was not admissible in this case against this party, and cannot be considered.

The distribution agreements which the defendant tendered to plaintiff were in accordance with the legal rights of the parties, as set forth in the lease, and the plaintiffs have no right to an order for a larger accounting under the case alleged and proved. Accordingly, the decree for plaintiffs is reversed.

Decree reversed.

CULBERTSON, P. J. and BARDENS, J., concur.