(794 P.2d 322)

No. 64,344

NEWELL BARKER, *Appellant*, v. JAY C. BOYER, ELDEN E. AMBROSIER, *et al.*, *Appellees*.

Opinion filed June 22, 1990.

*Allen Shelton*, of Clark, Shelton & Pratt, P.A., of Hill City, for appellant.

*Randall W. Weller*, of Jones & Weller, P.A., of Hill City, for appellees.

Before BRAZIL, P.J., LARSON, J., and JOHN W. WHITE, District Judge, assigned.

LARSON, J.: Newell Barker appeals from the trial court's ruling that the lesser interest clause in an oil and gas lease operates to reduce an overriding royalty interest.

In 1945, Mabel A. Loyd acquired title to all of the surface and mineral rights in and to the Northwest Quarter of Section Nineteen, Township Eight, Range Twenty-two, Graham County, Kansas.

On December 21, 1977, Ms. Loyd conveyed to a third party one-half of the mineral interest in the described property fully participating in the right to lease and to receive bonuses, delay rentals, and royalties.

Later, on the same day, Ms. Loyd conveyed the described real property to Ronald L. Quint and Sherry J. Quint, but reserved a one-half interest in the minerals for a term of ten years from April 17, 1973, and as long thereafter as oil and gas is produced. The reservation was non-participating in leasing rights, bonuses, and rentals, but fully participating in royalties. By this conveyance the Quints acquired the right to lease Ms. Loyd's reserved interest plus the right to receive bonuses and rentals.

The Quints subsequently leased the described real property to Randy Marintzer; utilizing a producers form 88 1-43B oil and gas lease containing the following lesser interest clause:

"If said Lessor owns a less interest in the above-described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the Lessor only in the proportion which his interest bears to the whole and undivided fee. However, such rental shall be increased at the next succeeding rental anniversary after any reversion occurs to cover the interest so acquired."

In addition, the lease contained the following typewritten clause:

"Lessor reserves the right to pump all wells. Lessor reserves a $1/16$ of $7/8$ Override and an option to purchase a $1/16$ working interest. Lessee shall be responsible to prevent salt water contamination, and development, exploration of fresh water should contamination occur."

Production was obtained on the land in 1981. The division order title opinion showed the Quints owned a $1/16$ of $7/8$ overriding royalty for which they received payment.

When the Quints filed for bankruptcy in 1983, their .0546875 overriding royalty interest was sold by the trustee to Barker.

The new lease operators (Boyer and Ambrosier) requested title opinions in 1986. The title opinions concluded Barker was entitled to only an undivided one-half of $1/16$ of $7/8$ overriding royalty.

Barker sued Boyer and Ambrosier, claiming ownership of a full $1/16$ of $7/8$ overriding royalty. The oil purchaser paid the disputed interest into court.

After both parties filed summary judgment motions, the foregoing stipulation of facts was entered, and the trial court ruled Barker owned only one-half of $1/16$ of $7/8$ overriding royalty interest. Barker appeals. We reverse and remand with instructions.

*Does the lesser interest provision of this oil and gas lease apply to the overriding royalty interest reserved by the lessors?*

"Regardless of the construction of the written contract made by the trial court, on appeal a contract may be construed and its legal effect determined by the appellate court." *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987).

Because of uncertainty as to the extent of the mineral interest owned, when an oil and gas lease is executed the typical printed lease form (like the one utilized herein) provides that the lessor purports to lease the entire mineral interest in the described land. The lessee then relies on the lesser interest clause, which is also often referred to as the proportionate reduction clause, to compute the lessor's actual interest in the property for payment purposes. Pierce, Kansas Oil and Gas Handbook § 7.07 (1986).

"For example, lessor owns an undivided one-half interest in the leased land. His royalty would be reduced to reflect his proportionate ownership of the entire mineral interest—one-half. If the lease provides for a one-eighth royalty, the lessor will receive ½ x ⅛th or a ¹⁄₁₆th share of production." Pierce, § 9.47.

The specific wording of the lesser interest clause also applies to the bonus paid for the execution of a lease and the delay rentals paid thereunder. See, *e.g., Brooks v. Mull*, 147 Kan. 740, 748, 78 P.2d 879 (1938).

The normal share reserved by the lessor under an oil and gas lease is a one-eighth royalty interest. The share of the lessee, usually seven-eighths, is commonly called the working interest. An overriding royalty is normally a charge on the working interest and not a reduction in the lessor's interest.

The Kansas Supreme Court in *Campbell v. Nako Corporation*, 195 Kan. 66, 70, 402 A.2d 771 (1965), described an overriding royalty in the following manner:

"Typically, the term 'overriding royalty' is used to describe a royalty carved out of the working interest created by an oil and gas lease. Most frequently it is created subsequent to a lease by outright grant or by a reservation in the assignment of the operating rights. It is an interest in oil and gas produced at the surface, free of the expense of production and its outstanding characteristic is that its duration is limited by the duration of the lease under which it is created. (See 3 Summers, Oil and Gas, perm. ed., § 554.) In Kansas any covenants in the instrument creating it are not covenants running with the land (*Nigh v. Haas*, 139 Kan. 307, 31 P.2d 28), and such

interest is not an interest in land but is personal property. (*Connell v. Kanwa Oil, Inc.*, 161 Kan. 649, 170 P.2d 631)."

It is universally agreed that the lesser interest clause acts on the bonus, delay rentals, and the lessor's royalty payable under an oil and gas lease. The issue herein, which is a matter of first impression in Kansas, is whether the lesser interest clause operates to reduce Barker's overriding royalty interest.

Two of the leading authorities in commenting on the application of the lesser interest clause to an overriding royalty interest reach conflicting conclusions. 4 Williams, Oil and Gas Law § 686.7 (1989) opines: "It is usually assumed that these clauses are applicable to all royalty interests of the lessor, however described, although there is some contrary authority." The text in 3A Summers, The Law of Oil and Gas § 609.2 (1990 Supp.) reads: "The amount of an overriding royalty is determined by the language of the instrument creating it and not the lesser interest clause of the lease."

The leading case on this issue is *Williams v. Sohio Petroleum Co.*, 18 Ill. App. 2d 194, 151 N.E.2d 645 (1958). Lessors owned one-fourth of the mineral rights, and the lease had a lesser interest clause and the following typed provision: " 'In addition to the royalties provided for above, the Lessors hereby reserve an overriding royalty of 1/32nd of 7/8ths of all oil and gas produced and saved under and by virtue of this oil and gas lease.' " 18 Ill. App. 2d at 196.

After recognizing that the lesser interest clause protects the lessee from double liability as to the royalty payments, *Williams* reasons:

"Nobody acquires such an overriding interest merely by virtue of ownership of mineral rights. It is acquired only by contract, and *is payable in the* amount and to the person designated by the contract, and no one else. No question of double liability to other owners can arise therefrom, hence, the reason for a lesser interest clause does not apply." 18 Ill. App. 2d at 198.

*Williams* then summarizes the problem and several of the applicable cases in the following manner:

"[T]he extent of the overriding royalty may be, and often is, limited by the extent of the mineral interest of the owner. It depends upon the wording of the reservation. The majority of the decisions hold this wording controls, without reference to a lesser interest clause . . . .

"The reasoning is simply this: although the lease describes a certain tract of land, it cannot confer on the lessee any greater rights to the oil than the owner has. If the lessor owns only a fraction of the minerals, the lessee must deal with the other owners to acquire a right to work their interests; he obtains by the first lease only the limited right to take that owner's fraction of the oil. The owner may demand an override as to all oil taken from the described land, or, he may limit the override to the oil rights included under the lease. In the latter case, it applies only to the fraction he owned. The following are illustrative cases:

"Pollock v. McAlester Fuel Co., 215 Ark. 842, 223 S.W.2d 813. The lessor owned all the land and one-half of the mineral rights. He made an oil lease describing the land, and reserving an overriding royalty to $1/16$th of $7/8$ths of all oil and gas produced 'under the terms of this lease.' The court held the override must be applied to only one-half the oil taken from the land, because that was all that could be produced under the 'terms of the lease.' . . .

. . . .

"R. Lacy Inc. v. Jarrett (Tex. Civ. App.), 214 S.W.2d 692. A landowner owned only a fraction of the minerals thereunder. He made a lease reserving a fraction of the oil produced 'from the land described in this lease.' The court held this would not be limited to his fraction of mineral rights, but applied to all oil produced from the land.

"Hooks v. Neil (Tex. Civ. App.), 21 S.W.2d 532. This involved a deed rather than a lease. The owner of a one-half interest in land conveyed it reserving a fraction of oil produced on 'the land and premises herein described and conveyed.' Held: the reservation applied only to one-half since that was all the deed *conveyed*."

"King v. First National Bank, 144 Tex. 583, 192 S.W.2d 260. This was also a deed by the owner of an undivided one-half interest in land. The reservation was of a fraction of oil produced from 'the hereinabove described land.' Held: The reservation would not be reduced to one-half of oil produced, but applied to all oil produced from the *described land*, since that is what the deed said.

"McMahon v. Christmann, 303 S.W.2d 341. . . . [T]he court referred to the 'lesser interest clause.' It was held not to apply . . . . A . . . concurring opinion pointed out there was no need to refer to the lesser interest provision, because the reserved override was a fraction of all oil produced from the *described land*, and would have to be given that effect for the simple reason that was what the reservation said." 18 Ill. App. 2d at 198-200.

The result in *Williams* flowed naturally from the court's reasoning. Since the overriding royalty was $1/32$ of $7/8$ of all oil and gas produced and saved "under and by virtue of this oil and gas lease," the reserved interest was applied "only to the $1/4$th interest

involved, and not to all oil produced from the 'premises.' " 18 Ill. App. 2d at 200.

The most recent Illinois decision, *Downen Enterprises v. Gem Oil & Gas Co.*, 131 Ill. App. 3d 826, 828, 476 N.E.2d 42 (1985), reaches a different result but follows the reasoning of *Williams*.

"As stated in *Williams*, the extent of the overriding royalty interest reserved by [a lessor] depends on the wording of the reservation without reference to the lesser interest clause. . . . [D]efendant's predecessor in interest accepted plaintiff's lease containing a reservation of a one-eighth of eight-eighths overriding royalty interest, a one-eighth of the total mineral interest and not a one-eighth of only plaintiff's interest in the minerals. . . . [D]efendant is bound by the same reservation."

In each of the Texas cases cited in *Williams*, the reservation of the overriding royalty was given effect in accordance to its terms. The same logic was well stated in *Pollock v. McAlester Fuel Co.*, 215 Ark. 842, 847, 223 S.W.2d 813 (1949):

"Reservations, if made, may be worded as the parties please. If they provide that the grantor shall have a named fraction of the oil produced on all of the described land, that is one thing; if they provide that he shall have a fraction of what is produced from the interest conveyed by the particular lease, it is another thing. The courts will enforce either agreement as made."

We hold the determinative factor is the wording of the overriding royalty reservation or grant and not the application of the lesser interest clause. We reverse the trial court in its application of the lesser interest clause to this overriding royalty reservation.

In our construction of the terms of this oil and gas lease we must also give consideration to the familiar rules of construction set forth in *Jackson v. Farmer*, 225 Kan. 732, 739, 594 P.2d 177 (1979):

"[T]he intent of the parties is the primary question; meaning should be ascertained by examining the documents from all four corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; reasonable rather than unreasonable interpretations are favored; a practical and equitable construction must be given to ambiguous terms; and any ambiguities in a lease should be construed in favor of the lessor and against the lessee, since it is the lessee who usually provides the lease form or dictates the terms thereof. [Citations omitted.]

In making the proper construction it is important to recognize that what is not said is as important as what is stated. There is no reference to language limiting the reservation to "oil and gas

produced under the terms of this lease," which would limit the override as the trial court has done. Neither is the reservation stated to apply to "all oil produced from the described land," which would result in the reserved interest operating on total production.

The reservation in issue herein is not stated to be limited to the oil and gas produced under the terms of this lease nor expanded to all oil produced from the described land, but simply states: "LESSOR RESERVES A $1/16$ of $7/8$ OVERRIDE."

The trial court's opinion stated that neither party contended the wording was ambiguous, although Barker contended in the trial court and on appeal that it is. We do not agree with Barker's contention, although we reach the result he advocates. We hold the wording is not ambiguous and must be construed as it is plainly written—to reserve a $1/16$ of $7/8$ overriding royalty interest—undiminished or unchanged by the royalty owned by the Quints (which was only a reversionary interest) or the extent of the minerals they held the right to lease (a one-half interest). Such a holding is consistent with the rules of construction of *Jackson v. Farmer*.

The Quints clearly intended to reserve a full $1/16$ of $7/8$ overriding royalty interest. They were paid for .0546875 of the production with the consent of the first working interest owners of the lease.

Even if we deemed the reservation to be ambiguous, we would reach the same result because we are giving the wording a practical and equitable construction, and one in favor of the lessor and against the lessee, by holding that the lessor receives exactly what they reserved—a "$1/16$ of $7/8$ override."

We reach the same result by considering the express wording of the reservation consistent with the decisions from Illinois, Texas, and Arkansas.

Both parties have improperly cited and attempted to utilize a prior unreported Court of Appeals decision. Kansas Supreme Court Rule 7.04 clearly prohibits this:

"Since unpublished opinions are deemed to be without value as precedent and are not uniformly available to all parties, opinions so marked shall not be cited as precedent by any court or in any brief or other material presented to any court, except to support a claim of res judicata, collateral estoppel, or law of the case." Rule 7.04 (1989 Kan. Ct. R. Annot. 34).

No consideration has been given to the unreported case cited by the parties.

We reject the doom and gloom predictions of ruination of the oil and gas industry which Boyer and Ambrosier claim will follow from the result we reach herein. Parties remain free to negotiate the terms of oil and gas leases. Lease hounds, title examiners, and Kansas courts will continue to establish the extent of overriding royalty interests from the wording agreed to by the parties.

The decision of the trial court is reversed. This matter is remanded with instructions to enter judgment quieting title in Barker to a full $1/16$ of $7/8$ overriding royalty interest (.0546875 of total production) and ordering payment to Barker of the suspended funds held by the clerk of the district court.